IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| ROBERT W. G., <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | CV 18-49-BU-JCL <br><br><br> ORDER |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying his application for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.* Plaintiff filed his application in July 2014, alleging disability since February 19, 2014. Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the agency's final decision for purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

1

Plaintiff was 55 years old on the date his application was filed, and three days away from his 58th birthday at the time of the ALJ's decision in June 2017.

I. **Legal Standard**

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004) (quoting 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in

2

the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, however, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v).

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. See *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

## II. Discussion

The ALJ began his analysis at step one of the sequential evaluation process by finding that Plaintiff meets the insured requirements of the Social Security Act through June 30, 2019, and has not engaged in substantial gainful activity since his February 15, 2014, alleged onset date. At step two, the ALJ determined that Plaintiff had several medically determinable impairments, including cavernous hemangioma of the brain, diplopia, cervical degenerative disc disease, hypertension, coronary artery disease, hyperlipidemia, and obesity. (Doc. 10, at

20). While the ALJ agreed that these were medically determinable impairments, he found they were not severe within the meaning of the regulations. Because the ALJ found that Plaintiff did not have any severe impairments, he ended his inquiry and found Plaintiff not disabled at step two. Thus, the sole issue on appeal is whether the ALJ's step two determination is supported by substantial evidence and free of harmful legal error.

At step two, the claimant bears the burden of demonstrating he had a severe impairment or combination of impairments, which lasted or was expected to last for a continuous period of not less than twelve months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 404.1509, 416.905, 416.909. A severe impairment is one that significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 416.920(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as including:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling reaching, carrying, or handling; (2) Capacities for seeing, hearing and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and usual work situations; and (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1522(b), 416.922(b). The claimant has the burden of establishing the severity of an alleged impairment by providing medical evidence consisting of

signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1521, 416.921.

The Ninth Circuit has described the step-two inquiry "as a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); see also *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). 416. "An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb*, 433 F.3d at 686 (quoting *Smolen*, 80 F.3d at 1290). Thus, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb*, 433 F.3d at 687 (quoting SSR 85-28). A "finding of no disability at step two" may be affirmed where there is a "total absence of objective evidence of severe medical impairment." *Webb*, 433 F.3d at 688.

Plaintiff argues he met his de minimis burden at step two, and the ALJ improperly weighed the medical opinion evidence in finding that his medically determinable impairments were not severe. Plaintiff maintains the ALJ erred by discounting the opinion of his treating physician Dr. Robert Webster, who completed a medical source statement on November 17, 2016 finding that Plaintiff

6

had several significant work-related limitations. (Doc. 10, at 564-66). Dr. Webster indicated that Plaintiff's history of cerebrovascular accident, visual difficulties, memory problems, and left-leg weakness resulted in extreme difficulties maintaining social functioning; extreme difficulties with concentration, persistence, and maintaining pace; and extreme episodes of deterioration or decompensation related to double vision, and would cause him to miss more than four days of work per month. (Doc. 10, at 564-66). In his corresponding treatment notes from November 17, 2016, Dr. Webster found loss of strength in Plaintiff's left leg and remarked that Plaintiff "should easily qualify for disability." (Doc. 10, at 764).

The ALJ rejected Dr. Webster's November 2016, assessment on the ground that the limitations he identified were not consistent with other evidence in the record showing minimal reduction in Plaintiff's ability to function. (Doc. 10, at 23-24). Instead, the ALJ credited the assessment of the state agency physicians who reviewed the medical records in January 2015 and determined that Plaintiff's medically determinable impairments did not result in any physical or mental limitations. (Doc. 10, at 24). At that time, the record reflected that Plaintiff had been admitted to the hospital in February 2014 after presenting to the emergency room with complaints of visual changes manifesting as double vision, left leg

numbness, malaise, and exercise intolerance. (Doc. 10, at 388). Plaintiff was assessed with a small intracranial hemorrhage following an MRI, hypertension, hyperlipidemia, and depression. (Doc. 10, at 376, 414). At the time of his discharge a few days later, Plaintiff was still experiencing double vision and was given a letter to provide to his employer stating that he was "disabled indefinitely pending rehabilitation efforts. (Doc. 10, at 378). In June 2014, Plaintiff followed up with neurologist Dr. John Steffens, who determined based on his review of the MRI that Plaintiff had not experienced an intracranial hemorrhage, but did have an unspecified abnormality in the brain. (Doc. 10, at 442). A subsequent MRI showed marked improvement, and in July 2014 Dr. Steffens found there was no reason for Plaintiff "not to return to work aside from the diplopia," which could be fixed with prism glasses. (Doc. 10, at 436). Citing these records, the state agency physicians found that, as of January 2015, Plaintiff's medically determinable impairments did not result in any significant limitations.

Significantly, however, Dr. Webster's subsequent assessment and underlying treatment notes were not part of the record when the state agency physicians reviewed the file in January 2015. Dr. Webster examined Plaintiff for the first time in November 2015, one day after he presented to the emergency room, complaining of chest pain and dizziness. Dr. Webster conducted a stress test,

which Plaintiff was not able complete and showed that Plaintiff had left ventricular dysfunction. Dr. Webster transferred Plaintiff to another hospital for urgent heart catheterization. (Doc. 10, at 527, 739). Plaintiff was assessed with unstable angina, and cardiologist Dr. Michael Reed performed a heart catheterization with balloon angioplasty.1 (Doc. 10, at 739-756). When Dr. Webster saw Plaintiff next in November 2016, he completed the medical source statement discussed above, which identified several functional limitations associated with Plaintiff's medically determinable impairments. The only other functional capacity assessment comes from the state agency physicians, who did not have the benefit of reviewing Dr. Webster's and Dr. Reed's records.

As these medical records reflect, there is objective evidence in the record suggesting that Plaintiff's impairments are more than de minimis. While there are gaps in the medical records and observations from other medical providers suggesting that Plaintiff's limitations may not be as extreme as Dr. Webster indicated, the Court finds that the record "includes evidence of problems sufficient to pass the de minimis threshold of step two." *Webb*, 433 F.3d at 687. "This is not the total absence of objective evidence of a severe medical impairment that would

---

1 The ALJ considered these records, but mistakenly wrote that a heart catheterization was not performed. (Doc. 10, at 24).

9

permit [the Court] to affirm a finding of no disability at step two." *Webb*, 433 F.3d at 688. Because there is objective evidence in the record suggesting that Plaintiff's impairments significantly limited his ability to perform certain basic work activities, the ALJ erred by finding that Plaintiff did not have any severe impairments and ending his analysis at step two.

The Court also notes that the ALJ discounted Plaintiff's subjective symptom testimony during his step-two discussion. An ALJ must perform a two-prong analysis when evaluating a claimant's allegations of pain and subjective symptoms. *Molina*, 674 F.3d at 1112. First, the ALJ must determine whether the claimant has a medically determinable impairment that "could reasonable be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112. Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Molina*, 674 F.3d at 1112.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but his statements concerning the severity of those symptoms were not entirely consistent with the medical and other evidence in the record. (Doc. 10, at 21). The ALJ followed this

statement with a recitation of the medical evidence, but in doing so failed to explain how that evidence contradicted specific aspects of Plaintiff's testimony. See *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (an ALJ errs in discounting a claimant's testimony by simply reciting the medical evidence in support of the residual functional capacity determination without identifying which medical evidence specifically discredits which symptom testimony). Thus, to the extent subjective symptom testimony is relevant at step two, the ALJ further erred by failing to provide clear and convincing reasons for discounting Plaintiff's subjective complaints.

Because the ALJ erred by finding Plaintiff did not have any severe impairments and ending his analysis at step two, this case must be remanded. Except in rare circumstances, the proper course is to remand to the agency for further proceedings. *Leon v. Berryhill*, 874 F.3d 1130, 1132 (9th Cir. 2017). Under the credit-as-true rule, a district court may remand for an award of benefits when the following three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the

claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even if all three requirements are met, the Court retains "flexibility" in determining the appropriate remedy and may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014 (quoting *Garrison*, 759 F.3d at 1021). Here, remand for further proceedings is warranted because the ALJ ended his analysis at step two of the five-step disability review process and there are several outstanding issues that must be resolved before a disability determination can be made.

## IV. Conclusion

For all of the above reasons,

IT IS ORDERED that the Commissioner's decision is reversed and this matter is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405)(g).

DATED this 7th day of June, 2019.

_____
Jeremiah C. Lynch
United States Magistrate Judge